```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TRUSTEES OF THE NORTHEAST CARPENTERS
HEALTH, PENSION, ANNUITY, APPRENTICESHIP
and LABOR MANAGEMENT COOPERATION FUNDS,

                    Petitioners,                    REPORT AND
                                                    RECOMMENDATION
         -against-                                  CV 19-6098 (DRH)(AYS)

ADF DESIGN INC.,

                    Respondent.
-------------------------------------------------------------------X
```
**ANNE Y. SHIELDS, United States Magistrate Judge:**

Petitioners, the Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds ("Petitioners" or the "Funds"), commenced this action on October 30, 2019 against Respondent, ADF Design Inc. ("Respondent" or "ADF"), to confirm and enforce an arbitration award (the "Award") issued on September 28, 2019, in the amount of $71,901.64 (Petition, Docket Entry ("DE") [1].) Petitioners also seek their attorney's fees and costs incurred in enforcing the Award in the amount of $1,692.50. (Petition, DE [1].)

On September 3, 2020, Petitioners filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. (DE [25].) By Order dated September 4, 2020, the Honorable Denis R. Hurley referred Petitioners' motion for summary judgment to this Court for a Report and Recommendation as to whether the Petition should be granted. (Order of Hurley, J., dated Sept. 4, 2020.) For the reasons set forth herein, it is respectfully recommended that Petitioners' motion for summary judgment be denied in light of the genuine issues of material fact identified herein.

BACKGROUND

The following facts are drawn from the parties' Local Civil Rule 56.1 Statements, the declarations offered in support and in opposition to the within motion, and the underlying documents referred to therein.

Petitioners are employer and employee trustees of multi-employer, labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act of 1947, 29 U.S.C. § 1002 ("ERISA"). (Pet. Local Civ. R. 56.1 Statement ("Pet. 56.1") ¶ 1.) Petitioners filed the within action pursuant to Section 502(a)(3) of ERISA, as amended, 29 U.S.C. § 1132(a)(3), and Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), to confirm and enforce an arbitration award issued against Respondent ADF. (Petition ¶ 1.)

ADF entered into a collective bargaining agreement ("CBA") with the North Atlantic Regional Council of Carpenters, f/k/a New England Regional Council (the "Union") on July 15, 2014, for the period June 1, 2014 through May 31, 2019. (Pet. 56.1 ¶¶ 4-5: Resp. Local Civil 56.1 Statement ("Resp. 56.1") ¶¶ 3-5.) The CBA provided that it would "continue thereafter from year to year unless either party notifies the other party of their desire to modify or terminate the [CBA]." (Pet. 56.1 ¶ 5; Resp. 56.1 ¶ 5.)

Pursuant to the CBA, ADF was required, <u>inter</u> <u>alia</u>, to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union. (Pet. 56.1 ¶ 7; Resp. 56.1 ¶ 7.) The CBA further provides that "[t]he Employer agrees that it is bound by and shall comply with the Agreements and Declarations of Trust and the Plans of the Empire State Regional Council of Carpenters Annuity Fund and Apprenticeship Training Fund. (Pet. 56.1 ¶ 8;

Resp. 56.1 ¶ 8.) One such agreement by which ADF was bound was a Joint Policy for the Collection of Delinquent Contributions (the "Collection Policy"). (Pet. 56.1 ¶ 9.)

The Collection Policy provides as follows:

> If an employer fails to submit remittance reports, weekly payroll reports, or other reports of work for which contributions to the Funds are required, such that the Funds cannot determine the amount owed by the employer for a given month, then . . . the [Funds] will compute the estimated amount of contributions due by assuming that the hours for which the employer is obligated to contribute for each week in the unreported month equal the highest number of average hours for which the employer was obligated to contribute in a week for any four consecutive weeks within the 36 months immediately preceding the unreported month.

(Tompuri Decl, Ex. B at Art. 3.2, annexed thereto.) Pursuant to the Collection Policy, interest on delinquent contributions is to be calculated at the rate of 0.75% per month, compounded. (Pet. 56.1 ¶ 13; Resp. 56.1 ¶ 13; Tompuri Decl. ¶ 11 and Ex. B at Art. 2.1(D).) In addition, "[l]iquidated damages shall be calculated from the Due Date, and shall become due and owing if suit is commenced and/or arbitration is demanded. The amount of the liquidated damages shall be 20% of the delinquent Contributions." (Pet. 56.1 ¶ 14; Resp. 56.1 ¶ 14; Tompuri Decl. ¶ 12 and Ex. B at Art. 6.1.)

The Collection Policy provides that, in the event an employer fails to remit contributions to the Funds, the matter shall be sent to arbitration before the Funds' designated arbitrator. (Pet. 56.1 ¶ 11; Resp. 56.1 ¶ 11; Tompuri Decl. ¶ 9 and Ex. B at Art. 2.3(A).) The Collection Policy further provides that the employer shall be liable for all costs incurred in collecting delinquent contributions, including, without limitation, audit costs, attorney's fees and arbitration fees. (Pet. 56.1 ¶ 12; Resp. 56.1 ¶ 12; Tompuri Decl. ¶ 10 and Ex. B at Art. 1.1(C), Art. 6.1-6.3.)

As set forth above, ADF was a party to the CBA, which required it to, inter alia, make periodic contributions to the Funds, submit periodic reports, make its books and payroll records

available upon request for an audit, and submit any disputes to final, binding arbitration. A dispute arose between the parties when ADF allegedly failed to submit contributions owed for the period March 2019 through September 2019 in the amount of $57,986.72. (Pet. 56.1 ¶ 15.) Pursuant to the Collection Policy, the Funds initiated arbitration before the Funds designated arbitrator, J.J. Pierson. (Pet. 56.1 ¶ 16.) Petitioners notified ADF of the arbitration by mailing a Notice of Intent to Arbitrate Delinquency by certified mail. (Pet. 56.1 ¶ 16; Tompuri Decl. ¶ 14 and Ex. C, annexed thereto.)

Thereafter, an arbitration hearing was held and the arbitrator rendered the Award, in writing, on September 28, 2019. (Pet. 56.1 ¶ 17; Resp. 56.1 ¶ 17.) ADF did not appear at the arbitration hearing. (Award, annexed to Tompuri Decl. at Ex D, at 1.) Pursuant to the Award, the arbitrator found that ADF was in violation of the terms of the CBA and ordered ADF to pay the Funds the sum of $71,901.64, consisting of: (1) $57,986.72 in delinquent contributions; (2) $1,489.37 in interest; (3) $10,755.55 in liquidated damages; (4) $900.00 in attorney's fees, plus interest on attorney's fees at the rate of 10% from the date of the Award; and, (5) $750.00 for the arbitrator's fee. (Pet. 56.1 ¶ 18; Resp. 56.1 ¶ 18.)

On or about October 11, 2019, ADF remitted a partial payment in the amount of $10,030.51. (Pet. 56.1 ¶ 19; Resp. 56.1 ¶ 19.) To date, there remains an unpaid balance on the Award of $61,871.13, which consists of: (1) $47,956.21 in delinquent contributions; (2) $1,489.37 in interest; (3) $10,755.55 in liquidated damages; (4) $900.00 in attorney's fees, plus interest; and, (5) the arbitrator's fee of $750.00. (Pet. 56.1 ¶ 20; Resp. 56.1 ¶ 20.)

Based upon ADF's failure to pay the balance of the Award, Petitioners commenced the within action, seeking to confirm the Award, as well as an award of reasonable attorney's fees and costs. (DE [1].) ADF appeared through counsel and filed an Answer to the Petition on

January 3, 2020. (DE [14].) Petitioners filed the within motion for summary judgment on September 3, 2020, (DE [25]), and Judge Hurley referred the motion to this Court to report and recommend as to whether to grant the motion and, if so, what, if any, damages, including attorney's fees and costs, should be awarded. (Order of Hurley, J. dated Sept. 4, 2020.)

DISCUSSION

I.   Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens

that the respective parties will bear at trial guide the district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

II.     Material Issues of Fact Preclude Summary Judgment

In opposition to the within motion, ADF argues that while the CBA herein contained an automatic renewal provision, as set forth above, it in fact terminated upon its expiration on May 31, 2019. The Court agrees with ADF.

Article 28 of the CBA provides as follows:

> This Agreement shall become effective on 06/01/2014 and shall remain in effect until 05/31/2019 and shall continue thereafter from year to year unless either party notifies the other party of their desire to modify or terminate this Agreement. Such notification must be in writing not more than ninety (90) days nor less than sixty (60) days prior to the expiration date or not more than ninety (90) days nor less than sixty (60) days prior to any expiration anniversary date thereafter.

(Banfield Decl., Ex. A.) By letter dated March 6, 2019, the Union notified ADF of its intention to "amend the terms, conditions, wage and benefits contained in the [CBA]." (Muller Decl., Ex. A.) In response, ADF, through counsel, sent the Union a letter dated March 28, 2019, advising that it was available to begin negotiations on May 8 or 9, 2019. (Muller Decl., Ex. B.) Ultimately, no negotiations took place and no amendments to the CBA were made.

The Union's March 6, 2019 letter advising of its intention to amend the CBA was provided to ADF within the sixty to ninety day period prior to the May 31, 2019 expiration date, as required under Article 28 of the CBA. Accordingly, based on the

6

express language of Article 28, the CBA between the Union and ADF terminated as of June 1, 2019. See, e.g., Lanzafame v. Dana Restoration, Inc., No. 09-CV-0873, 2011 WL 1100111, at *3, n.1 (E.D.N.Y. Mar. 22, 2011) (finding that where the Union sent defendant a letter evincing its desire to amend the collective bargaining agreement within the requisite time, "under its plain language, the CBA expired" as of its termination date); Mason Tenders Dist. Council Welfare Fund v. All Union, Inc., No. 01 Civ. 0152, 2002 WL 31115181, at *3 (Sept. 23, 2002) (finding that where defendant provided the Union with notice to terminate the collective bargaining agreement "within the 60 to 90 day period . . . the agreement between [defendant] and the Union terminated" as of the agreement's expiration date). As a result of the, no contributions were due from ADF after May 31, 2019.

The arbitrator's Award, however, found that ADF owes contributions from March 2019 through September 2019. (Award at 1.) If the CBA did, in fact, terminate as of May 31, 2019, the arbitrator exceeded the scope of his authority in awarding Petitioners contributions after May 31, 2019. See Trustees v. S&S Kings Corp., No. 20 Civ. 6443, 2021 WL 1518623, at * (S.D.N.Y. Apr. 16, 2021) ("An arbitrator's authority to settle disputes under a collective bargaining agreement is contractual in nature, and is limited to the powers that the agreement confers.") (quoting Leed Architectural Prods., Inc. v. United Steelworkers of Am., Loc. 6674, 916 F.2d 63, 65 (2d Cir. 1990)); Bragg v. Kalikow Family Partnership LP, No. 19 Civ. 8801, 2020 WL 2086014, at *6 (S.D.N.Y. Apr. 30, 2020) ("An arbitrator's 'award is legitimate only so long as it draws its essence from the collective bargaining agreement.'") (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

7

Petitioners argue that ADF's conduct evinced an intent to be bound by the CBA beyond May 31, 2019. (Pet. Reply Mem. of Law 1-5.) According to Petitioners, ADF continued to submit contributions, along with remittance reports and shop steward reports, after May 31, 2019. (Id. at 4.) ADF also continued to pay its employees' health insurance benefits after the expiration of the CBA, which, according to Petitioners, is consistent with ADF's adoption of the CBA after May 31, 2019. (Id.) Finally, Petitioners argue that ADF's intention to negotiate a new CBA prior to its automatic renewal evidences a desire to continue to be bound by the CBA. (Id. at 5.)

The foregoing creates a genuine issue of material fact that precludes summary judgment. A factfinder will need to determine whether ADF manifested an intent to continue to be bound by the CBA after its expiration on May 31, 2019, such that the CBA automatically renewed and the arbitrator's Award was, therefore, within the scope of his authority. Accordingly, this Court respectfully recommends that Petitioner's motion for summary judgment be denied.

## RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Petitioner's motion for summary judgment be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing

objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED.**

Dated: Central Islip, New York
      May 26, 2021                           /s/     Anne. Y. Shields
                                                                         Anne Y. Shields
                                                                         United States Magistrate Judge